## Goldberg, By, etc. v. Chesapeake & Ohio Railway Company.

(Decided October 20, 1925.)

### Appeal from Bracken Circuit Court.

1. Railroads—Plaintiff Held Not Entitled to Recover for Destruction of Automobile Under Doctrine of Last Clear Chance.—Where plaintiff's car was allowed to roll or skid onto track and stop, plaintiff held to have no cause of action against railroad for its destruction by train under doctrine of last clear chance, where he neither pleaded nor proved facts which would have warranted a recovery under that rule.

2. Railroads—Omission of Statutory Signal Held Immaterial.—In action for damages for destruction of plaintiff's car by train, when struck on crossing, that train did not give statutory signal for crossing as it approached, held immaterial, where it appeared that those in charge of car had full knowledge of train's approach long before it struck the car.

3. Railroads—Trainmen Not Required to Anticipate Car was at Standstill and would Not Move Off Track.—Trainmen, on train striking plaintiff's car at a public crossing, were not required to anticipate that car was at a standstill, and would not move off the track, until they observed the car, and saw that it was not moving, and were cognizant of such facts as would have appraised a reasonably prudent person under like circumstances that the car was at a standstill, and would not likely move off the track, at which time it became their duty to employ all reasonable means at hand to bring train to stop before striking car.

W. A. BYRON and ALLEN D. COLE for appellant.

BROWNING & REED for appellee.

Opinion of the Court by Judge Sampson—Affirming.

The trial court directed a verdict for the railway company in this case, wherein appellant, Goldberg, sued to recover damages of the railway company for the negligent destruction of his automobile, which had stopped upon a railroad crossing just as a fast passenger train came along at night.

Appellant was not with the car at the time it was struck by the train. Four other persons had been driving the car that evening. One of them testified concerning the accident:

"When we got half-way down, or about one-third way down, that street we saw a freight train on track. Engine had crossed the tracks I think going toward Cincinnati, and when we got about half-way, or probably a little over half-way of the block—weren't near crossing—about one-third of a block of crossing, Mr. Galbraith stopped machine dead still, waiting for train to pass, and while we were waiting there he killed his engine. We were there talking, wern't paying any attention to anything, and when we saw last coach of the train pass, the bell stopped ringing, no flagman there, no one to give signal of any kind, Mr. Galbraith stepped on the starter and put the car in low gear and you could have walked as fast. When we got a few feet from the track he applied the brakes to stop, but there's a down grade there and place in bad condition and the car skidded right on to the crossing. Ground covered with snow and ice there. The reason he applied the brakes was to stop the car before he got to the crossing to see if a train was there, but instead the car skidded there, and when we got to the crossing we saw a train coming, and when we saw the train coming car was in a hole and as he applied the brakes he stopped the engine so he could hear and as soon as we saw the lights we jumped out of the car because it was too late to do anything because the car was in a hole."

He further stated that sleet and ice covered the road and made it slick and that the car skidded on to the tracks; further saying: "Had there not been sleet and ice we would not have slipped." The parties in the car

saw the light from the train as it came around the bend about two blocks away. At that time the automobile was on the tracks—the brakes were on and the engine dead. Believing that they did not have sufficient time in which to start the car and drive it off the track before the train would reach the crossing they all jumped out and tried to roll the car off the track and failed. Other witnesses testified much as did the one from whose evidence we have copied above. At the conclusion of the evidence the court sustained a motion of the railway company to direct a verdict in its favor, and it is of this ruling that appellant now complains.

There was no evidence offered tending to show that the train was traveling at an unwarranted speed or that it could have been stopped by the exercise of reasonable diligence on the part of the trainmen before it reached the automobile on the crossing. As those in charge of the car stopped it near the track and thus allowed it to roll or skid on to the track and stop, appellant had no cause of action against the railway company for the destruction of his car, unless it arose out of the failure of the trainmen, after they discovered or could have discovered by ordinary care the car on the track to make such reasonable use of the brakes and appliances at their command to stop the train before it struck the automobile. In other words, appellant could have recovered only, if at all, by invoking the doctrine of the last clear chance. He neither pleaded nor proved facts which would have warranted a recovery under that rule.

In the case of Cumberland Railroad Co. v. Walton, it was held that a traveler who, by his own negligence, puts himself in peril on the railroad track, cannot recover, unless the damage may be avoided by proper care on the part of the railway company, after it has notice, actual or constructive, of the danger in which his negligence has placed him, and fails to use ordinary care to avoid the injury.

Appellant also complains of the directed verdict on the ground that the evidence showed that the train did not give the statutory signal for the crossing as it approached. If it should be admitted that the train did not give the signals, we are yet unable to see how appellant would be advantaged in his case. The evidence clearly shows that those in charge of the car saw the light from the train in advance of its coming and had full knowledge of its approach long before it struck the

car. They, therefore, did not need signals to advise them of its approach. The trainmen, however, did not know and had no means of knowing that the automobile would be on the crossing at that time and could not have had such information until they turned the curve and saw. the car. As it was a public crossing the trainmen were not required to anticipate that the car was at a standstill and would not move off the track until they had observed the car, and that it was not moving and were cognizant of such facts as would have apprised a reasonably prudent person, under like circumstances, in charge of an engine, that the car was at a standstill and would not likely move off the track, at which time it became the duty of the train operatives to employ all reasonable means at hand to bring the train to a stop before striking the automobile. Harlan v. L. & N. R. R. Co., 199 Ky. 279; Maples v. Louisville Railway Co., 195 Ky. 77; Louisville Railway Co. v. Thornberry, 197 Ky. 272; Louisville Railway Co. v. Rice, 199 Ky. 196.

There appears to have been no error in the ruling of the court directing the jury to find a verdict for the railway company, hence the judgment is affirmed.