## Cincinnati, New Orleans & Texas Pacific Railway Company v. Ross.

(Decided June 11, 1926.)

### Appeal from McCreary Circuit Court.

1. Railroads.—Whether engineer of train colliding with automobile whistled for crossing held question for jury.

2. Railroads.—Contributory negligence of driver in abandoning automobile when 10 feet from crossing, coasting slowly down grade, with train coming 200 feet away, held for jury.

3. Railroads.—One put in peril by negligent failure to warn of train's approach cannot be criticized because he failed to choose best alternative to avoid injury.

4. Trial.—Where general instruction on contributory negligence in usual form was given, failure to give concrete instruction held not objectionable, in absence of request.

5. Railroads—Instruction on Speed of Train, in Connection with Part of Instruction on Duties at Unusually Dangerous Crossing, Held Warranted.—In suit for damages to automobile when struck by train at crossing, instruction referring to speed of train, in connection with part of instruction bearing on duties of railroad, if jury believed that crossing in question was unusually dangerous, held warranted.

TYE & SILER and EDWARD COLSTON for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Appellant's railroad runs north and south through the city of Pine Knot, a town of some 400 or 500 people. Its depot is located at the south end of the town where the county road, coming from the north on the eastern side of the railroad, crosses the tracks at right angles and then runs southwardly on the western side of the railroad. The depot stands just north of the county road where it crosses the tracks. This crossing is used daily by 200 to 300 people. To the east of the depot, and between it and the county road, is a house track which extends from the north across and beyond the county road where it intersects with appellant's tracks. At the time of the accident hereinafter mentioned, and for a long time prior thereto, a large number of freight cars had been left standing on this house track, both to the north and to the south of its intersection with the county road. There was also piled by the side of these freight cars a lot of lumber and crossties. The track just in front and to the west of the depot is the north bound main track. Just west of this is a passing track, and in turn just west of this is the south bound main track. About 100 yards north of the depot the railroad curves to the west. It is impossible for one crossing in a westerly direction on the county road to see a train coming from the north until one emerges from behind the depot and until the train comes around this curve, and it is equally impossible for the engineer on the engine of such a train to see anybody crossing the track on the county road until his engine rounds this bend.

On June 25, 1925, appellee Ross was driving his automobile in a southerly direction on the county road

just north of the depot. He had two friends with him in the machine. When he reached the depot, he turned with the county road and started to cross the rail-road's tracks. As he came out from between the cut of cars on the house track, he looked to the south before crossing the north bound main to see if any train was coming. Seeing none, he let his machine roll along. As he crossed this north bound main and while his automobile was going very slowly, one of his companions, who was seated on the front seat with him, observed a passenger train coming around the curve from the north and with a shout of warning he jumped from the automobile. He was immediately followed by the other friend, who was on the back seat, and appellant followed them both. The automobile, which was going very slowly, continued under its own power onto the south bound main track and was run into by the train and demolished. At the time appellant abandoned his machine it was within some ten or fifteen feet of the south bound main track and the train, which was over two hours late and coming at a speed of about 40 miles an hour, was less than 200 feet from the point of collision. Appellee sued the appellant for the destruction of his automobile and on the trial secured a verdict and judgment. Appellant appeals.

No question is made as to the amount of the recovery if the appellee is entitled to recover at all. Appellant for reversal insists, first, that it was entitled to a peremptory instruction. There was abundant testimony to establish the fact that no signal of the approach of the train which destroyed appellee's machine was given for this crossing. It is true that appellant's engineer did testify that he blew the whistle for this crossing, but whether he did or not was clearly a question for the jury. But even his testimony, when fairly analyzed, demonstrates that the signals he did give in no wise complied with the requirement of section 786 of the Kentucky Statutes governing signals for public crossings outside the limits of incorporated towns, and therefore, even though his testimony had been uncontradicted, which it was not, and if appellant be correct in its position that this crossing, though in the corporate limits of Pine Knot, should have been treated like a county crossing just as a similar crossing was treated in L. & N. R. R. Co. v. Molloy's Admrs., 122 Ky. 219, 91 S. W. 685, yet it was not entitled to the peremptory it asked unless appellee was guilty of

contributory negligence as a matter of law in abandoning his automobile at the time he did. The case of Goldberg v. C. & O., 211 Ky. 16, 276 S. W. 1087, relied on by appellant is so dissimilar in its facts from the case before us as to afford no support for appellant's contention in this regard. There was some evidence introduced in this case to show that, had appellee put on his brakes he might, going at the speed he said he was going, and being distant from the south bound main track the distance some of the witnesses said he was when he abandoned his machine, have stopped his automobile before it got to that track or at least turned it to the side so as to avoid the collision. But there was other evidence to show that appellee with the means he had at hand could not have stopped his automobile or turned it before it got onto this track and that he did a very wise thing, so far as his personal safety was concerned, in abandoning it. Under such circumstances the question of contributory negligence was plainly one for the jury. Although appellee may not, as events turned out, have picked out the best possible solution of his problem, yet, if he was put in peril by the negligence of the appellant in failing to warn him of the approach of its train, he cannot be criticized by appellant because he did not choose the best alternative. C. & O. Ry. Co. v. Hoskins' Admr., 164 Ky. 575, 176 S. W. 29. As well said by Judge Mayer in the case of The Mary T. Tracy, 298 F. 528, at page 530:

"The contrary view, as testified by Capt. Nott, called as an expert, is but the old story of being able to tell, after the event, what should have been done, where the critics were not there, and were not confronted with the problem nor the emergency. There is always a Capt. Nott. Sometimes he sits by the cozy fireside, and sometimes he testifies in a court room. He recites how it could have been better managed, but, if the responsibility had been his, he would have been worried sick, and probably would not have done half as well."

The question whether appellee was guilty of contributory negligence or not in abandoning his automobile as he did was aptly submitted to the jury by instructions number three and four. He was not guilty of such negligence as a matter of law. It therefore results that the appellant was not entitled to a peremptory instruction.

It is next insisted that the court failed to properly instruct the jury. We have examined these instructions and find that under the facts of this case and especially in the light of the testimony of appellant's engineer, who said that he knew the conditions prevailing at this crossing, had known of them for a long time prior to the accident and regarded it as a dangerous crossing, they were warranted by the opinion of this court in the case of L. & N. v. Adams' Admr., 205 Ky. 203, 265 S. W. 623, and the cases therein cited. Some contention is made that, the court having given an instruction bearing on appellant's duties, if the jury thought from the evidence that the crossing here was an extra hazardous one, it should also have given one setting out the duties of the appellee under such circumstances, and that the instruction on contributory negligence should have been a concrete one rather than a general one as it was. But appellant neither offered nor requested any instructions along these lines. Instruction C, offered by it, when fairly analyzed does not call the court's attention to the fact that appellant desired any such instruction to which it now contends that it was entitled. Having failed to ask a concrete instruction on contributory negligence it cannot now complain that the court instructed but generally on the subject. In Louisville Gas & Elec. Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179, we held that a reversal will not be granted because of a failure on the part of the trial court to give concrete instructions touching the matter of contributory negligence where an instruction in general terms in the usual form was given and it appears that with such instructions the issues were fairly submitted to the jury. Such is the case here.

Lastly, appellant's criticism of instruction number one, in so far as it referred to the speed of appellant's train, is without merit, since this reference to speed was made in connection with that part of the instruction bearing on appellant's duties if the jury believed that the crossing here in question was an unusually dangerous one, and under the case of L. & N. v. Locker's Admr., 182 Ky. 578, 206 S. W. 780, such reference was warranted.

Perceiving no error prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.